**FILED**

**NOV 2 3 2005**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDY McRAE                                       )
10640 Campus Way South, #110                      )
Largo, Md., 20774                                 )
(301) 429-1274                                    )
                                                  )
         Plaintiff                                )
                                                  )
    v.                                            )
                                                  )        CASE NUMBER  1:05CV02272
                                                  )
DISTRICT OF COLUMBIA                              )        JUDGE: Reggie B. Walton
 Serve: Mayor Anthony Williams                    )
441 4th Street, N.W.                              )        DECK TYPE: Civil Rights (non-employme)
Washington, D.C. 20001                            )
                                                  )        DATE STAMP: 11/23/2005
         Defendants.                              )
                                                  )

**JURY ACTION**

### COMPLAINT FOR DAMAGES AGAINST THE DISTRICT OF COLUMBIA
(Selective and Discriminatory Enforcement of Housing Code Violations and Selective
Criminal Prosecution of Landlord)

### Nature of Action

1.    The original is suit for declaratory judgment, preliminary and permanent injunctive relief, and damages for housing discrimination against both the tenants and landlord Randy McRae on the basis of national origin, and for retaliation, under the Fair Housing Act of 1968, as amended, 42 U.S.C. §§3601 *et seq.*, for housing discrimination on the basis of national origin and place of residence under the District Columbia Human Rights Act, D.C. Code §§2515 and 1-2532, and for retaliation under D.C. Code §1-2525, **as it pertains to the Plaintiff herein, from this Courts Judgment of cause under civil action No. 00-862, 2922 Sherman Avenue Tenants Assoc. v. District of Columbia, an action against finding discrimination against the District.**

2.    **This action was brought predominantly by** Hispanic and Vietnamese residents in Washington, D.C. In this Cross-Complaint, the District has selected the landlord, an African

American male, on the basis of race and natural origin. In September 1999, the Columbia Heights Metro Station opened, and, in December 1999, the District signed agreements for $149 million commercial redevelopment of the area surrounding the Metro station. Before placarding the buildings for closure, the District failed to take less drastic and less discriminatory measures to ensure the health and safety of the tenants. For example, three weeks after threatening tenants with wholesale eviction, the District began criminal prosecutions of landlords for code violations - the first such prosecutions since 1995. The District failed to notify tenants in the condemned buildings about relocation assistance or relocation plans. If tenants are displaced, they are unlikely to find alternative housing in the vicinity of Columbia Heights given the increasing rents and low vacancy rates there. These acts by the District unlawfully displaced existing tenants through gentrification and replaced them with high price developer properties which those same tenants could not afford to occupy. These unlawful actions by the District required the additional removal of control of the real property from the Plaintiff and similarly situated landlord-owners, by discriminatorily and thru lack of due process.

3. **Plaintiff Randy McRae, was apart of the victims classified by the earlier suit. Like the plaintiffs in the <u>2922 Sherman Avenue</u> Tenants, Randy McRae was disconnected by housing code violations, and in order for the District' to further removal and displacing Hispanics and Vietnamese. The District went after a protected class to achieve a perverted purpose. In the <u>2922 Sherman Avenue Tenants</u> case, the affected tenants recognized the Districts scheme, and therefore sued. The Plaintiff herein, is part of the affected class.**

4. Since the District has arrested and criminally prosecuted Plaintiff herein as the owner of 1611 Park Road, the District refused to arrest or prosecute the other "owners" per

DCMR §199, i.e. Washington Gas. The District previously issued former owner, A. Bradley Askin, Esq a notice of housing code violations Notice No. ____ and Notice No. ____ which A. Bradley Askin, failed to correct or abate prior to the sale to McRae. The notices in this case are charges and counts cited at 1611 Park Road, involving units 205, 305 and 405 of a 40 unit apartment building, also the subject of prosecution of Plaintiff.

5. Jurisdiction is conferred on this Court by 42 U.S.C. §3613(a), 42 U.S.C. 1983, 28 U.S.C. § 1331, 28 U.S.C. §1343, and 28 U.S.C. §2201, and supplemental jurisdiction over the remaining claims exist under 28 U.S.C. §1367. Also, a federal question is presented.

### Jurisdiction and Venue

6. Venue is proper in this district under 28 U.S.C. § 1391, because the claims arose in the District of Columbia, and the Defendant resides in or does business in the District.

### Plaintiff

7. Plaintiff Randy McRae is a former owner of 1611 Park Road.

### Defendant

8. The District of Columbia ("the District") is a municipal corporation.

### Factual Background

9. During the years 1995, 1996 and 1997, Appellant McRae, along with Artina Williams, purchased rental properties located at 4110 – 4124 Ames Street, NE; 1417 Newton Street, N.W.; and 1611 Park Road, Washington, D.C. On January 20, 1999, the District began to prosecute landlords on its "Hot Properties List"; which may be defined as serious housing code violations by the District's definition. For reasons unknown, all of Plaintiff properties were

3

selected for intense inspection and prosecution for what was purported to be serious housing code violations. In early 2000, the District brought charges against Plaintiff, threatening to jail him for over 700 years. In order to avoid imprisonment for over 700 years[1], Plaintiff was forced from the weight of these threats into a confession to five (5) violations; this also led him into entering a $175,000.00, Deferred Sentencing Agreement with the District. Unfortunately, the District reneged on its commitments pursuant to the Agreement. Because of the payments being compelled by this agreement, Plaintiff lost $482,705.00 of proceeds from the sale of 1417 Newton Street, N.W., and forcing additionally Plaintiff to pay the cash sum of $85,000.00. These conditions further caused Plaintiff to fail and not to meet a condition of the first Deferred Sentencing Agreement, with the District; due to him not only having to pay the $85,000.00 up front, but also suffered foreclosure on the Ames Street and Park Road apartments, brought about by his lack of financial ability to sustain those properties. The enslaught of the District's actions forced economic calamities on Plaintiff's solvency.

10. Concurrently, the tenants of the several properties on the "Hot Properties List" filed suit against the District in the U.S. District Court for the District of Columbia, for selective enforcement of housing code violations on the basis of discrimination, in an action titled 2922 Sherman Ave. Tenants Assoc. v. D.C., et al., 1-OO-862, before The Honorable James Robertson. In April of 2004, a jury in that proceeding found the District of Columbia guilty of discrimination by means of selective enforcement of housing code violation, and awarded the tenants over One Hundred Thousand Dollars. [Plaintiff and other landlords were also the victims of the illegal policy of the District of Columbia that caused eviction of Spanish and Viet Namese

---

1 Each code violation carries a maximum sentence of 90 days jail times a citation or 1553 code violations x $90 =

4

tenants from the "Hot Properties List", in violation of law.] See copy of Order attached. 2

11. The District used a two-year timetable to develop a proposed $149 million complex near the new Metro station, that will include a supermarket, retail stores, and movie theaters. The impact of these plans served to motivate the District to prosecute the Plaintiff with the underlying purpose of seizing his properties to make it available for developers.

### Claim Against the District of Columbia

12. On or about March 3, 2000, the District of Columbia issued closure notices for five building within walking distance of the new Columbia Heights Metro station, including:

    A. 2922 Sherman Avenue was originally scheduled for closure on April 19.

    B. 1458 Columbia Road was originally scheduled for closure on April 4.

    C. 1418 W Street was originally scheduled for closure on April 12.

13. 2922 Sherman Avenue has a total of 17 units, approximately 15 of which are occupied. Ninety-three percent of the tenant households are Hispanic.

14. 1458 Columbia Road has 61 units, approximately 53 of which are occupied. Eighty-nine percent of the tenant households are Hispanic.

15. 1418 W Street has a total of 28 units, approximately 12 of which are occupied. Ninety-two percent of the tenant households are Hispanic.

16. The building noticed for closure are located in disproportionately Hispanic neighborhoods:

    A. 2922 Sherman Avenue is located in census tract ID #78409338 where Hispanics

---

$145,300.

comprise 16% of the total population.

B.  1458 Columbia Road is located in census tract ID#78409221 where Hispanics comprise 55% of the total population.

17.  On March 14, 2000, the District issued a list of 32 properties (including the five previously noticed for closure) entitled "Neighborhood Sanitization Program Substandard Properties List." Twenty-two of those listed properties are located in the disproportionately Hispanic Columbia Heights, Cardozo/Shaw, and Mount Pleasant neighborhoods. The total population of all the census tracts in which the identified buildings are located is 21% Hispanic.

18.  One of the listed buildings that was not scheduled for imminent closure, 1611 Park Road, has 40 units with approximately 25 occupied units. Nineteen percent of the tenant households were Hispanic. Thirty-four percent of the tenant households were Vietnamese.

19.  On information and belief, portions or the entirety of the placarded buildings were fit for human habitation. The District did not notify the tenants that the placarded buildings posed an imminent danger to the tenants' health and safety.

20.  At the time herein, the District had not sent any Vietnamese-language notices to Vietnamese tenants in the buildings on the District's list of 32 substandard properties.

21.  On January 23, 2000, Defendant McRae wrote the District via certified letter requesting a list of violations [see Exhibit 1, attached and made apart]2, requesting a general meeting or causing a show cause hearing to be convened to execute or take action to remove any and all housing code violations. The District refused to produce housing inspection reports, housing violation notices, building inspection reports, and building violation notices for the

---

2 Paragraphs number 12 through 20 are cited and made apart herein from the 2922 Sherman Avenue Tenants

buildings owned by Plaintiff, particularly 1611 Park Road, thereby severely hampering Plaintiffs' efforts to ensure that he as the owner corrected and cured the habitability issue.

22. Although there was a serious pre-existing at 1611 Park Road roof problem, the District only inspected 1611 Park Road once prior to the June 1997 purchase by McRae, and there is no other record that the District ensured that the prior landlord corrected the substandard conditions identified during that inspection. Specifically, former owner A. Bradley Askin, Esq. was issued Notice of Housing Code Violation No. _____ and Notice No. _____. A. Bradley Askin, Esq. failed to disclose Notice to McRae of these uncorrected violations. Additionally, all of the criminal charges related to 1611 Park Road, N.W., Apt. 405, also relate to the uncorrected and unabated "Askin" notices.

23. The District failed to take less drastic and less discriminatory measures to ensure the health and safety of the tenants before placarding buildings for closure. There was no hearing. The District has not used its allocated funds to correct substandard conditions in the targeted buildings as required by law. The District's Board of Condemnation did not invoke its authority to repair any of the targeted buildings and assess the costs as a tax against the various buildings. The District has not invoked its authority to levy fines as a tax against the property or to collect such a tax through the procedures established for the collection of general taxes. The District has not invoked its authority to order a rent reduction. The Mayor has not invoked his authority to assist building owners improve distressed property under DC code section 45-2584, as repeatedly request by Plaintiff, even after notice and warnings by DC Council members. See

---

Association case, No. 00-862, adjudicated and proved therein.

attached letters regarding the same, at Exhibit   .

24.     The District has not exercised its discretion to close only the portions of targeted buildings that were determined to be imminently dangerous to the tenants' health and safety.

25.     On March 24, three weeks after it had issued condemnation notices to the tenants, and in the face of increasing public scrutiny regarding the closure of buildings and disposition, of the tenants, District began criminal prosecutions of landlords, including your Plaintiff, R. McRae.

26.     The Rental Housing Acts are commonly found under Section 408 of the Civil Infractions Act, where DCRA's power is limited to suspension, revocation, denial, refusal to renew licenses and permits, and "lastly, criminal prosecutions". (emphasis added). <u>Committee on Consumer and Regulatory Affairs of the District of Columbia</u>. Committee repart on Bill 6-187. "District of Columbia Consumer and Regulatory Affairs, Civil infraction Act of 1985" at 2 (June 11, 1985) ("DCRA" Committee Report"). Building maintenance cost exceed rental income. Prosecution violates criminal constitutional rights.

27.     The District has commenced criminal prosecution of Defendant McRae and continues him under court order, but has refused prosecution of A. Bradley Askin and Washington Gas. The District simply ignored McRae's request for assistance for distressed properties, per D.C. Code Section 45-2584, and properly completed condominium sale request.

### Plaintiff's Damages

28.     As a result of the District's actions, the Plaintiff has no adequate remedy at law and has suffered, and is continuing to suffer, and will in the future, suffer irreparable pecuniary **loss of 124 apartment units valued at $66 million (trebled to $198 million)** and injury including, a deprivation of his rights to equal housing opportunities regardless of national origin

and place of residence, a deprivation of his to the provision of services and facilities in the District of Columbia, a deprivation of housing and the right to live and/or own property in an integrated community, as well as economic loss, non-humiliation, embarrassment and emotional distress, as well as being deprived of Due Process; all of which is a violation of the Fair Housing Act and DC Human Rights Act, D.C. Code §45-2584.

29. In engaging in the unlawful conduct as described, the District acted intentionally maliciously and with callous and reckless disregard of the rights of Plaintiff in violation of the Fair Housing Act and District of Columbia Human Rights Act.

### Count I
### (Violation of Fair Housing Act)

30. Plaintiffs repeat the allegations of paragraphs 1 through 31. The District' actions as described discriminate against Plaintiff on the basis of national origin (Hispanic and Vietnamese) and in further violation of 42 U.S.C. §§3604 (a) and (b), and 42 U.S.C. 1983.

### Count II
### (Violation of D.C. Code §1-2515 and §1-2532)

31. Plaintiff repeats the allegations of paragraphs 1 through 50. The District' actions described discriminate on the basis of national origin (Hispanic and Vietnamese) and place of residence in violation of the District of Columbia Human Rights Act, D.C. Code §§1-2515 and 1-2532, to effect the discrimination which is sited, provoking the economic calamity suffered by Plaintiff, an African American male.

### Prayer for Relief

32. WHEREFORE, the Plaintiff prays that this Court grant him the following relief:

    (a) enter a declaratory judgment finding that the foregoing actions of the

District violate sections 3604(a) and (b) of the Fair Housing Act, sections 1-2515 and 1-2532 of the District of Columbia Human Rights Act, and section 1-2525 of the D.C. Code;

 (b) enter a preliminary and permanent injunction directing the District to halt all criminal prosecution against Randy McRae, landlord, which discriminates on the basis of national origin and place of residence in violation of the Fair Housing Act and the District of Columbia Human Rights Act;

 (c) award compensatory damages in an amount to be determined by the jury that would fully compensate the cross plaintiff for the economic loss, humiliation, embarrassment, and mental and emotional distress that has been caused by the conduct of the defendants alleged herein **in an amount of ONE HUNDRED NINETY EIGHT MILLION DOLLARS ($ 198.000,000.00)**;

 (d) award plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and D.C. Code §1-2556; and

 (e) order such other relief as this Court deems just and equitable.

### Demand for Jury Trial

Pursuant to Fed. R. Civ. P. 38(b), the plaintiff demand a trial by jury of all issues triable by right.

Dated: November 23, 2005

Bobby Stafford, Esq. #458493
Randy McRae, Esq. - 430494
1000 Pendleton Street
Alexandria, Va.  22821
(703) 549-0284
Attorneys for Plaintiff

# Ft. CHAPLIN GLEN

218 Eleventh Street, S.E.
Washington, D.C. 20003

Office (202) 547-0200   Fax: (202) 544-3604

December 6, 2000

District of Columbia Government
Mayor Anthony A. Williams
Attn: Rental Housing Commission, General Manager, Bureau of Multifamily Finance
441 4th Street, N.W.
Washington, D.C. 20001

Re:   1417 Newton Street Apartments (aka Ft. Chaplin Group) Emergency Petition for
      Distressed Property Improvement Funds supported by 1417 Newton St. Tenants Assoc

Dear Sirs:

Reference is made to the attached Distressed Property Improvement Plan Petition related to the above noted property and revitalization. We are extremely interested in continuing to provide affordable, decent, safe, and clean housing to our community. It should be noted that unit rents charged in the above property average $500 per month, and at least 30 of our 33 tenants (or approximately 90%) are "very low" income tenants when compared to the Washington Area Median Income. As you may be aware, the majority of the tenants feel that over the years they have developed a good relationship with their landlord.

Importantly, the above property is eligible for the Distressed Property Program per D.C. Code Section 45-2503(a), i.e. definition of distressed property - (a) 2 years negative cash flow; (b) cited by DCRA for substantial noncompliance with housing regulations; (c) has been subject to deferred maintenance as a result of negative cash flow; and (d) in arrears on mortgage loan payment, property tax payments, and gas, utility and water sewer payments. Please consider immediate forgiveness of the gas bills, water bills and real property taxes due. Nevertheless, since there is an established "critical shortage" of low and moderate income rental housing units in the District of Columbia, this property does address the important housing need of both the District and the above tenants as contemplated by D.C. Code Section 45-2502 (to protect low and moderate income tenants from erosion of their incomes due to increased housing cost and to protect the erosion of moderately priced rental housing, etc.).

Accordingly, there can be little argument, wherein both the undersigned landlord and above tenants agree that the attached petition is in the best interest of the existing tenants and the District of Columbia. Lastly, it must be emphasized that based on the current situation this is an emergency petition. See the attached affidavit and letters.

We appreciate the opportunity to provide professional services and to continue our pleasant association.

Very truly yours,

Randy McRae

05 2272

FILED

NOV 23 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



COUNCIL OF THE DISTRICT OF COLUMBIA
WASHINGTON, D.C. 20001

**SANDRA C. ALLEN**
*Councilmember-Ward Eight*

Chair
Committee on Human Services
202-724-8045

December 14, 2000

The Honorable Anthony A. Williams
Mayor, District of Columbia
One Judiciary Square, 11th Floor
441 4th Street, N.W.
Washington, D.C. 20001

Re:   Reassessment and Restructuring of the Randy McRae Disposition Agreement

Dear Mayor Williams:

      I have found it necessary to apprise you as to information recently brought to my attention regarding the matter and the share with you my recommendation regarding the same.

      As you are no doubt aware, Mr. McRae is/was the owner of several rental properties in the District of Columbia, notably 1611 Park Road, N.W., 4110, 4116, 4124 Ames Street, N.E. and 1417 Newton Street, N.W. In pertinent part, the above Disposition Agreement recites: The District of Columbia through the Department of Consumer and Regulatory Affairs has cited the property (1611 Park Road, N.W.) for 403 violations of the District of Columbia Housing Code which carry fines totaling $26,186.00. The cited violations were not abated; as a result the government filed charges against the Defendant.

      Importantly, it should be noted that criminal charges were filed on only two buildings 1611 Park Road, N.W. (DC v. McRae, 862-00) and 4116 Ames Street, N.E. (DC v. McRae 861-00). In order to resolve the matters, Mr. McRae agreed to essentially, give up through foreclosure the very valuable 1611 Park Road building. While the aforementioned scenario appears well intentioned, **there are three (3) subtly punitive conditions contained in the Disposition Agreement: 1)** that Mr. McRae divest himself of all rental property owned in the District of Columbia in perpetuity; **2)** that through inaction the 4116 Ames Street criminal case (DC v. McRae 861-00) was not dismissed; and **3)** that Mr. McRae must donate a total of $175,000 to the Tenant's Association at 1611 Park Road. It is the last condition that is most disheartening, which I shall address, and note up front, that it appears that Mr. McRae's punishment far exceeds his crime, especially in view of the fact that he only owned the 1611 Park Road property 2 1/2 years prior to this incident.

According to the Disposition Agreement, compliance with the $175,000 financial penalty requires: "A $25,000 payment will be delivered within seven (7) days of the execution of this agreement to the tenants association of 1611 Park Road. Mr. McRae will divest himself of all claims for funds in the tenant escrow, which should be approximately $32,000.00. The remaining $118,000.00 will be delivered in $23,600.00 installments. The first installment will be delivered no later than January 15, 2001; the second installment will be no later than April 15, 2001; the third installment will be delivered no later than July 15, 2001; the fourth installment will be delivered no later than October 15, 2001 and the final installment will be delivered no later than January 1, 2002".

Note the 1611 Park Road building was sold to the tenants association at below market value and that Mr. McRae has already forwarded at least $67,000 to the tenants association. The Disposition Agreement further requires Mr. McRae to abate all violations in the other Ames Street properties and 1417 Newton Street property, and simultaneously make payments to the 1611 Park Road Tenants Association. It is this dual significant financial payments requirement, under the threat of re-brought criminal charges, which is on its face grossly unfair. While we do not want to unduly upset the existing agreement, **I would strongly recommend that the payments commence on May 15, 2001 rather than January 15, 2001, and perhaps extending the total payment period.** The point here is that the aforementioned payment schedule and abatement requirement is simply not feasible based on Mr. McRae's income, ability and the fact that the majority of his units are occupied by "very low" income tenants when compared to the Washington area median income. Further, it should be noted that, unlike any other landlord, Mr. McRae has had to file personal Bankruptcy and continuously faces personal and professional ruin as a result of this situation.

I would appreciate it if you gave my recommendation to move back the payment commencement date from January 15, 2001 to May 15, 2001 due consideration.

Very truly yours,

*[signature: Sandy Allen]*

Sandra "Sandy" Allen
Councilmember Ward Eight


cc: Randy McRae




GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

Mr. Randy McRae                                              12 January 2001
Fort Chaplin Group
218 Eleventh Street, S. E.
Washington, D.C. 20003

                                    Re: The 1417 Newton Street, N.W. Apts.

Dear Mr. McRae:

This letter acknowledges receipt of a Distressed Properties Improvement Program application on the referenced property.

                                    Sincerely,

                                    Dwight H. Reeves
                                    Special Projects Manager

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS**
**HOUSING REGULATION ADMINISTRATION**



Condominium and Cooperative
Conversion and Sales Branch

941 North Capitol Street, N. E.
7th Floor

January 9, 2001

Mr. Randy McRae, Owner
Fort Chaplin Glen
218 11th Street, S. E.
Washington, D. C. 20003

Re: Letter of Exemption - Vacancy
4124 Ames Street, N. E.
File #1565

Dear Mr. McRae:

The above referenced property is exempt from the provisions of Title II of the <u>Rental Housing Conversion and Sale Act of 1980</u>, as amended, (D. C. Law 3-86), pursuant to Section 210 of the Act. You may now file the Application for Registration needed to convert the property to a condominium.

Sincerely,

Linda W. Harried
Housing Regulation Specialist