UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
RANDY McRAE,                        )
                                    )
        Plaintiff,                  )
                                    )
                                    )
    v.                              )   Civil Action No. 05-2272 (RBW)
                                    )
THE DISTRICT OF COLUMBIA,           )
                                    )
        Defendant.                  )
_____)

**ORDER**

On November 23, 2005, the plaintiff commenced this action alleging violations of both the Fair Housing Act, 42 U.S.C. § 3604 (2000) ("FHA"), and the District of Columbia Human Rights Act, D.C. Code §§ 1-2515 and 1-2532 (2006) ("DCHRA"). Complaint ("Compl.") ¶¶ 30-31. Currently before the Court is the defendant's motion to dismiss and the plaintiff's opposition thereto.[1] For the reasons that follow, the defendant's motion is granted.

The plaintiff, an owner of several multi-family housing buildings, alleges that the District of Columbia engaged in practices that violated both the FHA and the DCHRA. Compl. ¶¶ 30-31. Specifically, the plaintiff states that in January 1999, the District of Columbia issued a list of "Hot Properties," i.e., properties with serious housing code violations, and began prosecuting the owners of those properties. Id. ¶ 9. A second list, titled "Neighborhood Sanitization Program Substandard Properties List" was issued in March 2000. Id. ¶ 17. A property owned by the plaintiff was included in this second list. Id. ¶¶ 9, 18. The plaintiff contends that despite

---

[1] The following papers have been filed in connection with this motion: (1) Memorandum of Points and Authorities in Support of the Defendant District of Columbia's Motion to Dismiss the Complaint ("Def.'s Mem.") and (2) the Plaintiff's Opposition to the District's Motion ("Pl.'s Opp'n").

repeated requests, the District of Columbia failed to provide him with notice of the housing code violations, building inspection reports, or housing inspection reports so that he could correct the violations. Id. ¶ 21. Thus, the plaintiff represents that although he was not afforded the opportunity to correct the violations, the District of Columbia filed charges to prosecute the plaintiff for the alleged housing code violations in early 2000. Id. ¶ 9. The parties ultimately resolved the case when the plaintiff entered into a deferred sentencing agreement. Id. According to the plaintiff, others who were similarly situated were also prosecuted. Id. ¶ 10. Many of those individuals, including the plaintiff, eventually brought suit in another case pending before another member of this Court, challenging what they deemed to be discriminatory and selective enforcement of housing code violations. Id.

The plaintiff has now brought this separate suit against the District of Columbia contending that his prosecution violated both the FHA and the DCHRA. Compl. ¶¶ 30-31. The factual predicate for the plaintiff's claims is his prosecution for the housing code violations in 2000. See generally Compl. ¶¶ 3-4, 9-11. Specifically, the plaintiff asserts that his prosecution for the housing code violations was discriminatory. Pl.'s Opp'n at 5. However, the plaintiff's claims cannot survive the defendant's challenge.

The FHA, which is contained in Titles VIII and IX of the Civil Rights Act of 1968, comprises a comprehensive legal scheme in the housing arena, as it is "applicable to a broad range of discriminatory practices, and enforceable by the complete arsenal of federal authority." See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 417 (1968). Under the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court . . . not later than 2 years after the occurrence or termination of an alleged discriminatory housing

practice . . . ." 42 U.S.C. § 3613(a)(1)(A) (2000).[2]  The DCHRA, which prohibits discrimination based upon, among other things, race, color, religion, national origin, sex, age, and marital status, D.C. Code § 1-2501, has a one year statute of limitations, D.C. Code § 2-1403.16.  However, the DCHRA affords a potential plaintiff two-years to allege an "unlawful discriminatory act, or the discovery thereof, for complaints of unlawful discrimination in real estate transactions brought pursuant to this chapter or the FHA."  Id.

In this case, every factual allegation which the plaintiff asserts as the basis for his FHA and DCHRA claims occurred in 2000.  See generally Compl. ¶¶ 3-4, 9-11.  The plaintiff's complaint, however, was not filed until November 2005, well past the limitations period of both the FHA and the DCHRA.  Nevertheless, the plaintiff claims that this action should not be dismissed because there is a continuing violation, and thus his claims are timely.  Pl.'s Opp'n at 4.  To support this argument, the plaintiff asserts that "the District has never ceased its acts and, as such, is continuing today."  Id.  While the Supreme Court has recognized that the continuing violations theory can save an untimely claim "[w]here a plaintiff, pursuant to the [Fair Housing] Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period," Havens Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982), the plaintiff has made no such assertion here.  In fact, the complaint only references the alleged FHA and DCHRA violations that occurred in 2000.[3]  The plaintiff asserts in his

---

[2] A plaintiff has other avenues to pursue a FHA violation, including, seeking relief through the Department of Housing and Urban Development.  42 U.S.S. § 3612(a).  Here, it is clear that the plaintiff chose to commence a civil action in an attempt to remedy the alleged violation he is challenging.

[3] The plaintiff's opposition cites various cases which he states are pending before the District of Columbia Court of Appeals.  Pl.'s Opp'n at 4.  It is unclear to the Court what questions are at issue in these cases, or if they even raise questions related to what is at issue in the present action.  It is the plaintiff's burden to establish this

(continued...)

opposition that there is a continuing violation here because he is prohibited from owning any rental property in the District of Columbia based upon the deferred sentencing agreement he entered into. Pl.'s Opp'n at 5. This does not amount to a continuing violation.

The plaintiff's complaint alleged that he is the victim of an unlawful prosecution. As such, the discriminatory act occurred when the plaintiff was prosecuted for alleged housing code violations. This occurred in 2000. Compl. ¶ 9. It is the unlawful act itself that starts the running of a statute of limitations, and the continuing consequence of this prosecution and the deferred sentencing agreement does extend the statute of limitations period. Felter v. Norton, 412 F. Supp. 2d 118, 125 (D.D.C. 2006) ("The continuing violations occurring within the statute of limitations must be actual acts committed, rather than merely effects of prior acts.") (citing Guerra v. Cuomo, 176 F.3d 547, 551 (D.C. Cir. 1999)); see, e.g., Paschal v. Flagstar Bank, 295 F.3d 565, 572-74 (6th Cir. 2002) ("a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation") (citing Tolbert v. State of Ohio Dep't of Trans., 172 F.3d 934, 940 (6th Cir. 1999)); Achee v. Port Drum Co., 197 F. Supp. 2d 723, 735-36 (E.D. Tex. 2002) (same). Accordingly, there is no basis for the Court to conclude that the continuing violation theory renders the plaintiff's claims timely.

The plaintiff also asserts that his complaint is timely because he filed a Notice of Reservation of Rights on April 11, 2004, in the other case that is pending before another member of this Court. Pl.'s Opp'n at 6. This argument must fail for several reasons. First, the plaintiff has provided no case authority to support this assertion and this Court can find none. Second,

---

[3](...continued)
Court's jurisdiction and citing these appellate cases, without more, is insufficient to demonstrate a continuing violation. See Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982) (the plaintiff has the burden of pleading and proving equitable reasons for tolling the statute of limitations).

assuming that the plaintiff did in fact file this Notice of Reservation of Rights in the other case, it was not filed until April 11, 2004. Thus, this filing was also made after the limitations period had expired. Moreover, the plaintiff has attached to his opposition what he purports to be this filing, Pl.'s Opp'n, Ex. C, and it makes clear that the plaintiff (a cross-defendant in the other case) has joined in and incorporated as his own, a motion filed by another party in the other case for a bifurcated trial and that he "reserve[d] all his rights, including the right to discovery" in that case. Id. To the extent the plaintiff has reserved any rights not advanced in the other litigation, that reservation has applicability solely in the other case. Thus, if the plaintiff believes his claims are not barred by the applicable statute of limitations as a result of the Notice of Reservation of Rights, it is in that earlier case that his claims must be pursued.

Based on the foregoing, this Court is compelled to conclude that the plaintiff's complaint is not timely and must be dismissed.[4]

**SO ORDERED** this 26th day of June, 2006.

REGGIE B. WALTON
United States District Judge

---

[4] The plaintiff also asserts that he has properly alleged a claim under 42 U.S.C. §§ 1982-83 (2000). The plaintiff's complaint, however, only alleges violations of the FHA and the DCHRA. Compl. ¶¶ 30-31. Accordingly, such a claim is not before the Court.